UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANN CELOTTO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3-06CV650 (JCH) |
| v. | : | |
| | : | |
| JOHN BRADY, ET AL., | : | JUNE 22, 2007 |
| Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 23]**

**I.      INTRODUCTION**

The plaintiff, Ann Celotto, a former employee of the Amity Regional School

District Number 5 ("Amity"), brings this action against the defendants, John Brady,

Superintendent of Schools, and Edward C. Goldstone, principal of Amity Regional High

School.  In a previous Ruling on Defendants' Motion to Dismiss [Doc. No. 18], the court

dismissed the claims against Amity.  Celotto sues each of the remaining defendants in

his individual capacity.

The defendants have filed a Motion for Summary Judgment [Doc. No. 23]

seeking to dismiss all of Celotto's claims pursuant to Rule 56 of the Federal Rules of

Civil Procedure.

**II.     STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

entitled to judgement as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once

the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III.    FACTUAL BACKGROUND[1]

In December 2002, Ann Celotto was hired by Amity to be a twelve-month secretary at Amity Regional Junior High School. See Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at ¶ 1 [Doc. No. 23]. In December 2003, Celotto was hired to be a ten-month secretary at Amity Senior High School, to which position she transferred on January 5, 2004. Id. at ¶ 2. Celotto received a separate stipend to handle the Student Activity Funds, which on a daily basis exceeded $20,000 and included

---

[1]For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support her allegations.

accounts for teachers, alumnae, and student activity accounts.  See Plf.'s Loc.R.Civ.P.

56(a)2 Statement ("Plf.'s Stat.") at Ex. 1, Celotto Aff. at ¶¶ 4-6 [Doc. No. 30].

On April 13, 2004, Celotto prepared a deposit for $441.30 by placing that amount

in a green bank bag.  See Def.'s Stat. at ¶ 6.  She left the bag on top of her desk until

the bank courier arrived.  Id. at ¶ 7.  The bank later reported that $290 in cash was

missing from the deposit.  Id. at ¶ 9.  A police report determined that this money was

stolen while the bank bag was on Celotto's desk, which she likely left unattended at

some point before the courier arrived.  Id. at ¶¶ 7, 10.  Celotto was not disciplined for

this incident.  Id. at ¶ 11.

Dr. John Brady was hired as Amity's Superintendent on October 18, 2004.  Id. at

¶ 4.  On October 26, 2004, Celotto received $423 as a deposit from the school store.

Id. at ¶ 12.  Celotto placed the money in an envelope or green sealed bag and put it in

her desk drawer, which she believed she locked before leaving at the end of the day.

Id.  However, Celotto did leave her desk containing the deposit unattended at some

point during that day.  Id. at ¶ 14.  The next morning, Celotto saw that cash was missing

from her desk drawer, although no signs of forced entry were found.  Id. at ¶¶ 13, 15.

Celotto was not disciplined for this incident.  Id. at ¶ 16.

On November 1, 2004, Amity purchased a safe for the school funds, which was

subsequently placed in the office of the Assistant Principal, Robert Cole.[2]  Id. at ¶ 17.

On December 14, 2004, Celotto received $180 as a cash deposit from the school store,

for which she prepared a deposit and placed the money in her desk drawer, which she

_____

[2]According to Celotto, the safe was not delivered to Cole's office until February 2005.
See Plf.'s Stat. at ¶ 17.

believes to have locked upon leaving the building for her lunch break.  Id. at ¶ 18.

When she returned, Celotto noticed the cash was missing.  Id. at ¶ 19.  Celotto was not

disciplined for this incident.  Id. at ¶ 20.

On December 3, 2004 (but not reported until January 28, 2005), Celotto received

$2,175 as a deposit in checks, for which she prepared a bank deposit slip.  Id. at ¶¶ 21-

22.  However, the checks were never deposited in the bank.  Id. at ¶ 22.  Celotto claims

that Hudson Bank personnel were responsible for this "mishap," pointing to a deposit

slip and canceled check from a parent made out to Amity High School, as evidence that

one of the checks in the $2,175 deposit was deposited.  See Plf.'s Stat. at ¶ 21.

On February 11, 2005, Dr. Brady met with Celotto to discuss her performance

regarding the handling of the student activity fund.  See Def.'s Stat. at ¶ 24.  Dr.

Goldstone and Lolly Dedman, Celotto's union representative, were also present at the

meeting.  Id.  On February 14, 2005, Dr. Brady followed up with a letter to Celotto

advising her that she would be subject to further discipline, up to and including

termination, if she did not improve her management and control of the student activity

fund.  Id. at ¶ 26.

In April 2005, Don Bonomi, a high school Spanish teacher, submitted a signed

statement in which he claimed that, on April 11, he had personally given Celotto a

deposit of cash and checks in the amount of $1,750, as well as a check request for

$1,120.  Id. at ¶ 28.  Bonomi received a check from Celotto on April 15, but the $1,750

was never deposited in the bank.  Id. at ¶¶ 30-31.  Another Spanish teacher at the high

school, Carol Miranda, reported that she saw Bonomi give Celotto the deposit.  Id. at ¶

29.

At the end of the school day on or around May 5, 2005, Dr. Brady called Celotto into his office to tell her she was terminated.  Id. at ¶¶ 32-33.  Dr. Goldstone and Celotto's union representative, Ms. Dedman, were also present at this meeting.  Id. at ¶ 34.  Celotto walked to her desk crying, called her husband, and told Dr. Goldstone that he had not been honest and did not protect her.  Id. at ¶¶ 37-38.  A security guard was summoned to the office by Assistant Principal Cole.  Id. at ¶ 39.  Another secretary remarked that Celotto was upset.  Id. at ¶ 40.  Celotto left the building, accompanied by Ms. Dedman.  Id. at ¶¶ 41-42.  The next day, Celotto received a letter from Dr. Brady confirming her termination for failing to properly manage and control the student activity fund.  Id. at ¶ 43.  Celotto subsequently grieved her termination before an arbitrator, who determined Amity had just cause to terminate her.  Id. at ¶ 45.

## IV.    DISCUSSION

### A.    Equal Protection (Count III)

Celotto argues that her termination was in violation of the Equal Protection Clause of the U.S. Constitution.  The defendants challenge Celotto's Equal Protection claim by first arguing that Celotto has not sufficiently shown herself to be similarly situated to other Amity employees.  The court agrees.

Because Celotto does not claim to be a member of a protected group, she may only pursue her Equal Protection claim under the so-called "class of one" analysis. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  To prevail on a "class of one" equal protection theory, Celotto must show that she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the

5

difference in treatment." Id. A plaintiff's burden on a "class of one" claim is "extremely

high," and a plaintiff cannot prevail absent a prima facie showing that she is identical in

all relevant respects to the individuals with whom she compares herself. Neilson v.

D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) (citing Purze v. Village of Winthrop Harbar,

286 F.3d 452, 455 (7th Cir. 2002)).

In the instant case, Celotto compares herself to "the other employees in the

Administration office who were in fact handling cash." See Plf.'s Memorandum in

Opposition to Summary Judgment ("Mem. in Opp.") at 27 [Doc. No. 28]. She points out

that from December 2003 until January 2005, Dr. Goldstone and Assistant Principal

Cole took money home in the evenings if it had arrived after the bank courier had come.

Id. However, even if the court credits Celotto's testimony, as it must on summary

judgment, this fact alone does not establish that she is similarly situated to the degree

required for a "class of one" claim. Celotto has not shown how she is similar to these

individuals, and in fact the court believes that she would have difficulty doing so

because of the fact that they were given direct access to the safe while Celotto was not.

Id.

In her response to defendants' Interrogatory Number 8, Celotto alleges that she

was treated differently than two similarly-situated individuals, Dr. Goldstone and Donna

Salemme, both of whom had school money disappear without being disciplined for it.

See Def.'s Stat. at Ex. B, Interrog. Response #8. On April 28, 2004, Ms. Salemme

reported that $110 in cash was missing from her desk drawer in the Guidance

Department. Id. at ¶ 47; Plf.'s Stat. at Ex. 4. Celotto admitted that this incident

occurred before Dr. Brady was hired as Superintendent, and that he had no knowledge

of it prior to this litigation.  See Def.'s Stat. at ¶¶ 48-49.  Thus, this court finds that

Celotto has not provided any evidence that Dr. Brady, the decision-maker responsible

for Celotto's termination, had knowledge of this incident prior to terminating her.  See

Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001) ("Absent some

evidence of this knowledge, no reasonable juror could infer that the defendants

intended to treat Giordano differently from other NYPD officers."); Bd. of Managers of

Soho Int'l Arts Condo. v. City of New York, 2004 WL 1982520, at *21 (S.D.N.Y. 2004)

("[A] plaintiff must demonstrate that the defendants knew of others similarly situated

such that their differential treatment of plaintiff was intentional.").  Further, the record

reveals only one loss related to Salemme.  Celotto was treated similarly to her: she was

not terminated for the first loss related to her.  Indeed, it was the fourth loss, after Dr.

Brady's hiring, that led to her termination.

     With respect to Dr. Goldstone, Celotto claims he was not disciplined despite

money disappearing while under his supervision on two occasions.  See Def.'s Stat. at

¶ 51, Ex. B, Interrog. Response #8.  The first incident occurred on September 10, 2004,

also prior to Dr. Brady becoming Amity's Superintendent.  See Def.'s Stat. at ¶ 52.  On

that day, Dr. Goldstone received a cash deposit from Celotto, which he placed in a

valise on his office desk.  Id. at ¶ 53.  Celotto was present when Dr. Goldstone placed

the money on his desk.  Id. at ¶ 55.  This money subsequently disappeared.  Id. at ¶ 54.

Dr. Goldstone was not disciplined for this incident.  Id. at ¶ 56.  The second incident

occurred on April 26, 2005, when a deposit of checks and cash that Dr. Goldstone

reportedly placed into the safe disappeared from the safe.  Id. at ¶¶ 57-59.  Dr.

Goldstone was not disciplined for this incident.  Id. at ¶ 61.

The court finds that these comparisons are insufficient as a matter of law. Notwithstanding the fact that Celotto, in her position as secretary, has not shown how she is similar to Dr. Goldstone, in his position as principal of the high school, even if the court were to overlook this, Celotto has not demonstrated how she was treated differently from Dr. Goldstone. Celotto also was not disciplined after three separate occasions of money disappearing under her supervision, two of which occurred under Dr. Brady's tenure. Indeed, if the court considers only the October 26 and December 14, 2004 incidents involving the missing money, both of which occurred after Dr. Brady was hired and both of which are not disputed by Celotto, see Plf.'s Stat. at ¶¶ 12, 15, 18-19, Celotto has provided no evidence that she was disciplined for these two incidents, and in fact has admitted that she was not. Id. at ¶¶ 16, 20. Thus, Celotto was not disciplined at least until the third alleged incident of money disappearing under her supervision after Dr. Brady was hired (and fourth over the period of Dr.'s Goldstone's tenure). Because her comparison to Dr. Goldstone only involves two incidents of money disappearing under his supervision, the court finds that Celotto has not established a prima facie showing that she is identical in all relevant respects to Dr. Goldstone. See Neilson, 409 F.3d at 104.

Celotto has not satisfied the high burden that is required for "class of one" claims. Thus, the court finds that Celotto has not sufficiently shown herself to be identical in all relevant respects to any of the persons with whom she may compare herself. The court therefore grants summary judgment on this claim.[3]

---

[3]The court therefore need not address the defendants' qualified immunity defense.

**B.      Intentional & Negligent Infliction of Emotional Distress** (Counts I & II)

Since this court grants summary judgment to the defendants on Celotto's federal

claim, it will decline to exercise supplemental jurisdiction over Celotto's state law claims

of intentional and negligent infliction of emotional distress.  See 28 U.S.C. § 1367(c)(3).

**V.      CONCLUSION**

For the foregoing reasons, the defendants' Motion for Summary Judgment [**Doc.**

**No. 23**] is GRANTED.  The clerk is ordered to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 22nd day of June, 2007.


                                         /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge